IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

VERNON MOYER,

    Plaintiff,

v.

WEXFORD MEDICAL,

    Defendant.

Case No.: GJH-17-1923

**MEMORANDUM OPINION**

*Pro se* Plaintiff Vernon Moyer filed an action pursuant to 42 U.S.C. § 1983 alleging that he received inadequate medical treatment while in custody at Maryland Correctional Institute—Jessup ("MCIJ"). ECF No. 1. Defendant has filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 9. Although advised of his right to do so, ECF No. 10, Moyer has not filed a response to Defendant's dispositive Motion and the time to do so has expired. The matter is now ripe for review. The Court finds a hearing in these matters unnecessary. *See* Local Rule 105.6. For the reasons that follow, Defendant's Motion, construed as a Motion for Summary Judgment, is granted.

**I.    BACKGROUND**

Moyer alleges that Defendant failed to provide adequate medical care in June of 2017 in response to him seeking treatment for pain in his right foot. ECF No. 1. Defendant submitted Moyer's medical records from the relevant time period and an affidavit from Dr. Sisay, a physician involved with Moyer's care. ECF Nos. 9-3; 9-4; 9-5. According to the medical records,

1

Moyer suffers from lower back pain as a consequence of a car accident. ECF No. 9-4 at 2.[1] Notes from Moyer's chronic care visit on March 10, 2017 state that Moyer suffered from "moderate and aching" lower back pain which "radiates to the right buttock and right leg." *Id.*

On June 6, 2017, Moyer was seen by Nurse Practioner Yetunde Rotimi after placing a sick call. Rotimi's notes from the visit state:

> [Moyer] presents today with pain in right lower extremity. Patient reports pain started 3 days [ago] and he is unable to ambulate[;] that the pain is mostly in his calf. Patient reports that the pain is very different from what he had before and the pain is increasing. Patient reports none of his medication relieves the pain and denies recent injury.

*Id.* at 7. The notes contain various medical observations following examination of Moyer's leg (*e.g.*, "1+RLE edema and 2+ pedal edema"; "Positive homan[;] Well's score of 3 for pain"). *Id.* In an affidavit to the Court, Sisay explains the significance of the observations:

> Plaintiff's exam revealed 1+ edema of his right lower extremity, 2+ edema of his right foot, and leg swelling of 2 inches (Plaintiffs left leg was 13 inches in circumference and the right was 15 inches) and calf tenderness of moderate severity which resulted in a Well's score of 3. In addition, Plaintiff had positive Homan's sign strengthening the suspicion for deep venous thrombosis. There was no redness or discoloration noted and pulses in dorsalis pedis and posterior tibial sites were palpable. A well's score of 3 or higher suggests that DVT [deep vein thrombosis] is likely. . . . It is standard medical practice to undertake diagnostic ultrasound and subsequent management in all DVT likely patient with Well's score of 3 or higher. . . .
>
> These above symptoms and signs presented features for high probability for the diagnosis of deep vein thrombosis, or blood clot, in Plaintiff's right leg. The report of "different" pain in the right leg of recent onset, swelling in one lower extremity and the foot, the positive Homan's sign, and the Well's score of 3 are all indications of a possible DVT. A DVT is a serious condition because if the blood clot breaks off and travels through the blood stream to the lungs it can block blood flow and cause a pulmonary embolism ("PE"). A PE is a serious medical emergency that can damage the lungs, other organs and potentially be lethal. The

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

> medical standard of care calls for immediate and aggressive treatment for a diagnosis of DVT.

ECF No. 9-5 at 3–4. Accordingly, Rotimi requested authorization for Moyer to receive an "ultrasound of the right lower extremity." ECF No. 9-4 at 8. Sisay states that Moyer was "prescribed empiric dose of Lovenox twice daily for seven days for a presumptive diagnosis of DVT to thin the blood and help prevent the possible clot from enlarging and migrating to cause PE pending ultrasound result." ECF No. 9-5 at 4; *see also* ECF No. 9-4 at 8. Moyer was also prescribed Tylenol as needed for pain management, instructed to discontinue certain medications that he was already taking, and was placed on various restrictions for a week to reduce the need to walk. ECF No. 9-4 at 8; ECF No. 9-5 at 4. Sisay avers that, in his opinion "to a reasonable degree of medical probability this was a reasonable treatment option for Plaintiff's condition." ECF No. 9-5 at 4.

On June 12, 2017, Moyer returned to the prison clinic unscheduled, reporting that he was still experiencing pain in his right leg and that the pain was preventing him from being able to sleep. ECF No. 9-4 at 9. Rotimi assessed his leg and observed no swelling, discoloration, or weakness. Moyer was given capsaicin for pain and advised that his ultrasound was scheduled for the following morning. *Id.*

Notes from Moyer's June 14, 2017 visit state that he was "seen post ultrasound, he reported that he was clear, and informed that he has no DVT during U/S. No result available with patient." *Id.* at 11. Lovenox was discontinued "based on verbal report from patient" that he did not have DVT. *Id.* Sisay avers that:

> [t]reatment with Lovenox can present with a number of unwanted side-effects, including but not limited to unusual bleeding in any part of the body such as bleeding gums, coughing up blood, black or bloody stool, difficulty breathing or swallowing, dizziness, headache, and nausea. Plaintiff did not present with any of these side-effects subsequent to receiving Lovenox. Lovenox was very unlikely to

3

> have affected Plaintiff's back pain condition. The course of treatment with Lovenox did not impair treatment of Plaintiff's back pain condition or prolong the condition.

ECF No. 9-5 at 4.

## II. STANDARD OF REVIEW

Defendant's dispositive Motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). Because Defendant has filed and relied on declarations and exhibits attached to its dispositive motion, the motion shall be treated as one for summary judgment.

Summary judgment is governed by Rule 56(a), which provides in relevant part that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In analyzing a

summary judgment motion, the court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). Because Moyer is proceeding *pro se*, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, the Court must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted).

## III. DISCUSSION

### A. Improper Defendant

As a preliminary matter, Moyer's Complaint must fail because the sole Defendant is an entity. Liability under 42 U.S.C. § 1983 attaches to:

> [e]very *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .

*Id.* (emphasis added). Wexford is not a person and cannot be sued under § 1983. However, as discussed below, even if Moyer had named Sisay and Rotimi as defendants, his Complaint still fails.

5

## B. Inadequate Medical Treatment

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it . . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences." *Grayson v. Peed*, 195 F.3d 692, 695–96 (4th Cir. 1999).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). A medical condition is serious when it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). "[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998).

If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001); *see also Jackson v. Lightsey*, 775 F.3d 170, 179 (4th Cir. 2014) (physician's act of prescribing treatment raises fair inference that he believed treatment was necessary and that failure to provide it would pose an excessive risk).

Moyer fails to adequately allege that Sisay and Rotimi were deliberately indifferent to his medical needs. Sisay avers that Moyer's symptoms "presented features for high probability" of DVT and that aggressive treatment of DVT was necessary, which Moyer does not dispute. ECF No. 9-5 at 3–4. Further, Rotini's immediate request for Moyer to be granted authorization to have an ultrasound undercuts Moyer's assertion that Sisay and Rotimi were deliberately indifferent. ECF No. 9-4 at 8. Even if Rotini and Sisay's use of Lovenox while Moyer was

7

waiting for his ultrasound was not the best treatment option, or even negligent, this is irrelevant to Moyer's constitutional claim herein. Moreover, the fact that Moyer was not satisfied with his care and that his pain returned after his ultrasound does not give rise to a constitutional violation. *See Peterson v. Davis*, 551 F. Supp. 137, 146 (D. Md. 1982), *aff'd*, 729 F.2d 1453 (4th Cir. 1984). Thus, even if Moyer had properly named Sisay and Rotimi as defendants, his claim is without merit.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion, construed as a Motion for Summary Judgment, ECF No. 9, shall be granted. A separate Order follows.

Dated: August    23, 2018                                     /s/
                                                        GEORGE J. HAZEL
                                                        United States District Judge